UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

_____

IN RE:

HENRY LOPEZ,                                                Chapter 13

              DEBTOR.                                       Case No. 09-10346-WCH

_____

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matter before the Court is the Motion of Aurora for Relief from Stay (the "Motion for Relief") filed by Aurora Loan Services, LLC ("Aurora")[1] and the Debtor's Response to Motion for Relief (the "Response") filed by Henry Lopez (the "Debtor"). Among the issues raised by the Debtor are whether Aurora has standing to prosecute the Motion for Relief and whether it improperly denied his request for a loan modification under the Home Affordable Modification Program ("HAMP"). For the reasons set forth below, I will grant the Motion for Relief.

## II. BACKGROUND

A. _Procedural History_

The Debtor filed a skeletal Chapter 13 petition on January 17, 2009. Thereafter, the Debtor filed his schedules on February 4, 2009. On Schedule A – Real Property ("Schedule A"), the Debtor listed a "Personal Residence" in Hyde Park, Massachusetts (the "Property") with a value of $300,000 and subject to secured claims in the amount of $452,000. On Schedule D –

---

[1] Aurora is the assignee and successor in interest to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Shelter Mortgage Company, LLC ("Shelter").

Creditors Holding Secured Claims ("Schedule D"), the Debtor disclosed a "First Lien on Residence" held by Aurora in the amount of $360,000 and a "Second Lien on Residence" held by Guaranty Bank in the amount of $91,800.[2]

On September 3, 2010, Aurora filed the Motion for Relief, asserting that the Debtor was three post-petition payments in arrears, the promissory note was in default, and he lacked equity in the Property. Specifically, Aurora alleged a total indebtedness of $389,615.16, of which $6,729.67 constituted post-petition arrears, and a property value of $224,000 based upon a broker's price opinion dated May 13, 2010. Based upon a liquidation value of $209,038.56, Aurora concluded that the Debtor lacked equity in the Property in light of encumbrances totaling approximately $481,415.16.

The Debtor filed the Response on September 17, 2010. In it, he generally denied the allegations of the Motion for Relief, but conceded that he was three post-petition payments in arrears. The Debtor further stated that Aurora wrongfully denied his request for a loan modification under HAMP by failing to follow the HAMP guidelines. Additionally, he suggested that Aurora might not be the proper party in interest to prosecute the Motion for Relief, as a mortgage assignment from Shelter to Evanston Insurance Company ("Evanston") was recorded in the Norfolk Registry of Deeds.[3]

On September 30, 2010, I conducted a hearing on the Motion for Relief at which time the parties explained that the fundamental dispute between them was whether Aurora appropriately utilized the Debtor's current "interest only" payment in the HAMP eligibly analysis or whether it should have incorporated the fully amortized payment applicable upon a future rate reset into the

---

[2] Curiously, the Debtor indicated that the unsecured portion of Aurora's claim was $177,000, even though he valued the Property at $300,000 and Aurora's lien is entitled to first priority.

[3] Docket No. 93, Exhibit 6.

2

calculation.  The Debtor argued that Aurora's analysis was simply wrong, and asked that I "make the lender come to the table."  At the conclusion of the hearing, I took the matter under advisement and ordered the parties to file briefs regarding HAMP, which they did timely.  As the Debtor's brief also expanded his argument regarding Aurora's standing, I ordered Aurora to file a supplemental brief clarifying its position.  Although the Debtor was afforded an opportunity to file a further response, he declined to do so.

 B.  The Note and Mortgage

 On October 28, 2004, the Debtor executed a note (the "Note") in the amount of $360,000 to Shelter.[4]  To secure that obligation, the Debtor contemporaneously granted a mortgage (the "Mortgage") to MERS as nominee for Shelter.[5]  I note that the Mortgage specifically identified MERS as the mortgagee under the instrument and granted it and its "successors and assigns" a power of sale.[6]  The attached copy of the Mortgage bears a Registry stamp reflecting that it was duly recorded in the Suffolk County Registry of Deeds (the "Registry") on October 29, 2004.[7]

 MERS subsequently assigned the Mortgage to Aurora by a Corporate Assignment of Mortgage dated March 5, 2008 (the "Assignment") and recorded it in the Registry on April 13, 2008.[8]  The Assignment, which was executed by "Michele Thompson, Vice President" and stamped with MERS's corporate seal, assigns to Aurora the "Mortgage together *with the Note* or other evidence of indebtedness . . . secured thereby, . . . and the full benefit of all the powers and

---

[4] Docket No. 101, Exhibit A.

[5] *Id.* at Exhibit B.

[6] In relevant part, the Mortgage states that the Debtor "does hereby mortgage, grant and convey to MERS (solely as nominee for [Shelter] and [Shelter's] successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . . ." *Id.*

[7] *Id.*

[8] *Id.* at Exhibit C.

3

of all the covenants and provisions therein contained, and [MERS] hereby grants and conveys

unto [Aurora], [MERS]'s beneficial interest under the Mortgage."[9]   Although the Assignment

purports to assign the Note as well, there is no evidence that MERS ever held it.

Nonetheless, the copy of the Note attached to the supplemental brief reflects that it has

changed hands several times.[10]   There are four endorsements on the Note.[11]   Although undated,

the first three endorsements indicate that the Note passed from Shelter to Guaranty Bank, F.S.B.,

then to Lehman Brothers Bank, F.S.B., and then Lehman Brothers Holdings, Inc.  I note that the

first two endorsements are signed by the same person- "Karen Cannistra, Assistant Secretary."[12]

The final endorsement from Lehman Brothers Holdings, Inc. is blank.[13]   MERS records provided

by both the Debtor and Aurora indicate that ALS - Wilmington Trust Co. ("Wilmington") is the

current investor, while Aurora is the servicer.[14]

## III. <u>POSITIONS OF THE PARTIES</u>

<u>Aurora</u>

As explained above, Aurora seeks relief from stay under 11 U.S.C. §§ 362(d)(1) and

(d)(2), arguing that the Debtor lacks equity in the Property and that it is not necessary for an

effective reorganization.  Aurora asserts that it has demonstrated that it is a party in interest by

---

[9] *Id.*

[10] *Id.* at Exhibit A.

[11]  *Id.*

[12] *Id.*

[13] *Id.*

[14]  *Id.* at Exhibit D; Docket No. 93 Exhibit 4.  I note that Aurora's brief muddies the water to the extent that, after identifying itself simply as "ALS," it states that "ALS is the current holder of *the loan*," making no effort to clarify who holds the Note.  Docket No. 99 at 2 (emphasis added).  As I emphasized in my order directing Aurora to file a supplemental brief, Massachusetts Local Bankruptcy Rule ("MLBR") 4001-1(b)(2)(F) requires a party seeking relief from stay to identify the original holder of the obligations secured by the mortgage and *every subsequent transferee*.

submitting documentation evidencing that it currently holds the Mortgage.  With respect to a

HAMP modification, it contends that the Debtor failed to satisfy the minimum eligibility criteria

of a debt to income ratio exceeding 31% based upon his monthly mortgage payment at the time

of the evaluation.  Aurora asserts that pursuant to section 6 of the Handbook for Servicers on

Non-GSE Mortgages (the "Handbook"), it was required to use the Debtor's current monthly

mortgage payment rather than a greater fully amortized future payment because the interest rate

will not reset until October 2014, more than 120 days after the date of the evaluation.

The Debtor

From the outset, the Debtor argues that there is an irrebuttable presumption that a Chapter

13 debtor's home is necessary for an effective reorganization.[15]  Moreover, he attributes the

current arrearage to the modification process.  In any event, the Debtor asserts that Aurora may

not seek relief from stay solely based on missed or reduced payments during the modification

process.

In his brief, the Debtor raises a plethora of questions regarding Aurora's standing to

prosecute the Motion for Relief.  First, relying on *Carpenter v. Longan*,[16] he contends that an

assignment of the mortgage, without the note, is a nullity.  Next, the Debtor argues that MERS,

as nominee of Shelter, could not assign the Mortgage to anyone because it is merely a title

holding entity.  He further notes that the Assignment could not, as it expressly states, assign the

Note because MERS never held it.

---

[15] *See In re Donahue*, 231 B.R. 865 (Bankr. D. Vt. 1998), *rev'd*, *Tatko v. Donahue (In re Donahue)*, 232 B.R. 610 (D. Vt. 1999).

[16] *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.").

The Debtor also finds fault with the Note, complaining that the endorsements are undated, concealing the date of the transactions. He also questions whether the signatory of two of the endorsements could have been an authorized officer of both Shelter and Guaranty Bank, F.S.B. Because the final endorsement is in blank, the Debtor asserts that the current holder of the Note is unknown, making it unclear who authorized MERS to assign the Mortgage.[17]

Continuing this theme, the Debtor attacks the validity of the Assignment on the basis that Aurora has not proven that Michele Thompson was sufficiently authorized under Mass. Gen. Laws ch. 183, § 54B to execute the Assignment and points out that Aurora has not come forward with the corporate resolution evidencing such authorization. Moreover, he suggests that it might not have been the correct MERS related entity that "authorized" her, assuming that any MERS entity could without knowing who was giving it instructions.[18] The Debtor also notes that there is another assignment recorded in the Registry from Shelter to Evanston. To resolve these issues, the Debtor requests that I schedule the matter for an evidentiary hearing.

With respect to HAMP eligibility, the Debtor argues that the Handbook specifically states that the monthly payment used to determine borrower eligibility includes a monthly payment of principal regardless of whether the expense is included in the Debtor's current mortgage payment. Furthermore, he contends that Aurora mischaracterizes the interest rate as adjustable

---

[17] I note, however, that the Debtor concedes that reference to MERS's internal documentation indicates the current investor is Wilmington.

[18] In support, the Debtor states: "There are three MERS related entities: Mortgage Electronic Registration Systems, Inc. (MERS1) was created in October of 1995. It ceased to exist on June 30, 1998. A new Mortgage Electronic Registration Systems was created on June 30, 1998 (MERS 2). This entity took over for MERS1 and its named changed in 1999 to Merscorp. On January 1, 1999, a wholly owned subsidiary of Merscorp was created and also named Mortgage Electronic Systems, Inc[.] (MERS 3)[.] This is the entity, MERS 3, which only holds mortgages. Debtor asserts that only MERS 3 can assign mortgages (if at all). We do not have sufficient information to ascertain who or what entity duly "authorized" Michele Thompson, Vice President of what entity to sign a mortgage assignment of Aurora Loan Services LLC." Docket No. 93 at 8.

rather than fixed by citing the "Pending ARM Resets" portion of the Handbook. As such, the

Handbook provisions regarding rate resets relied on by Aurora are inapplicable.

## IV. __DISCUSSION__

In *Grella v. Salem Five Cent Sav. Bank*, the United States Court of Appeals for the First

Circuit held that a relief from stay hearing should not involve a full adjudication of the merits of

claims, but merely a determination of "whether a creditor has a colorable claim to property of the

estate."[19] The First Circuit explained:

> The statutory and procedural schemes, the legislative history, and the case law all
> direct that the hearing on a motion to lift the stay is not a proceeding for
> determining the merits of the underlying substantive claims, defenses, or
> counterclaims. Rather, it is analogous to a preliminary injunction hearing,
> requiring a speedy and necessarily cursory determination of the reasonable
> likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If
> a court finds that likelihood to exist, this is not a determination of the validity of
> those claims, but merely a grant of permission from the court allowing that
> creditor to litigate its substantive claims elsewhere without violating the automatic
> stay.[20]

Nonetheless, as noted by Judge Rosenthal in *In re Maisel*, "[t]he plain language of section 362 of

the Bankruptcy Code requires that one be a "party in interest" to seek relief from stay,"[21] and

therefore, as a threshold issue, I must determine whether Aurora has the requisite standing to

bring the Motion for Relief.[22]

---

[19] *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994).

[20] *Id.* at 33-34 (footnote omitted).

[21] *In re Maisel*, 378 B.R. 19, 21 (Bankr. D. Mass. 2007).

[22] *See In re Hayes*, 393 B.R. 259, 266 (Bankr. D. Mass. 2008); *In re Maisel*, 378 B.R. at 21; *In re Schwartz*, 366
B.R. 265 (Bankr. D. Mass. 2007); *see also Sentinel Trust Co. v. Newcare Health Corp. (In re Newcare Health
Corp.)*, 244 B.R. 167, 170 (B.A.P. 1st Cir. 2000) ("[A] defect in standing cannot be waived; it must be raised, either
by the parties or by the court, whenever it becomes apparent.") (*quoting United States v. AVX Corp.*, 962 F.2d 108,
116 n.7 (1st Cir. 1992)).

"Generally, the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit."[23]   In other words, the moving party must be asserting its own rights and not those belonging to or derivative of a third party.[24]   For example, "[c]ourts have held that mortgage servicers are parties in interest with standing by virtue of their pecuniary interest in collecting payments under the terms of the notes and mortgages they service."[25]   Additionally, under Massachusetts law,

> The mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, . . . or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, do all the acts authorized or required by the power . . . .[26]

Therefore, a mortgagee with a power of sale is a party in interest under Massachusetts law.[27]

In the present case, Aurora presented documents illustrating that MERS, as nominee for Shelter, was the original mortgagee who then, on March 5, 2008, assigned the Mortgage to Aurora by the Assignment.   Although the Debtor points to a mortgage assignment from Shelter to Evanston as evidence that Aurora is not the current mortgagee, I note that the document

---

[23] *In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C. 2008) (*quoting Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir. 1983) (citations omitted).  *See In re Hayes*, 393 B.R. at 267.

[24] *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 104 (1st Cir. 1995); *Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995); *In re Newcare*, 244 B.R. at 170; *In re Hayes*, 393 B.R. at 267; *Shamus Holdings, LLC v. LBM Financial, LLC (In re Shamus Holdings, LLC)*, No. 08-1030, 2008 WL 3191315 (Bankr. D. Mass. Aug. 6, 2008). *See also Kyrs v. Official Committee of Unsecured Creditors of Refco Inc. (In re Refco Inc.)*, 505 F.3d 109, 115 n.10 (2d Cir. 2007).

[25] *In re Hayes*, 393 B.R. at 267 (*citing In re Woodberry*, 383 B.R. at 379; *In re Conde-Dedonato*, 391 B.R. 247 (Bankr. E.D.N.Y. 2008)).  *See also Ameriquest Mortgage Co. v. Nosek (In re Nosek)*, 609 F.3d 6, 7 n.2 (1st Cir. 2010) (recognizing that suits by servicers acting on behalf of holders are commonplace).

[26] Mass Gen. Laws ch. 244, § 14.

[27] *Id.*; *In re Hayes*, 393 B.R. at 267; *In re Huggins*, 357 B.R. 180, 183 (Bankr. D. Mass. 2006); *Lyons v. Mortgage Electronic Registration Systems, Inc.*, No. 09 MISC. 416377(JCC), 2011 WL 61186 (Mass. Land Ct. Jan. 4, 2011).

describes a mortgage in the original amount of $90,000, not $360,000.[28]  Upon further review of
the Debtor's exhibits, this assignment clearly relates to a second mortgage in favor of Shelter to
securing a $90,000 revolving credit line.[29]   Therefore, I find that Aurora has established a
colorable claim to the Property as Mortgagee.[30]

Despite a complete and comparatively simplistic chain of title recorded in the Registry,
the Debtor nonetheless challenges Aurora's standing for several reasons which I will address
*seriatim*.  First, the Debtor asserts that the Assignment of the Mortgage, without the note, is a
nullity, but under Massachusetts law, "where a mortgage and the obligation secured thereby are
held by different persons, the mortgage is regarded as an incident to the obligation, and,
therefore, held in trust for the benefit of the owner of the obligation."[31]   Accordingly, even
though MERS never had possession of the Note, it was legally holding the Mortgage in trust for
the Note holder.[32]

Second, the Debtor contends that MERS, due to its status as nominee of Shelter, could
not assign the Mortgage to Aurora.  This argument misapprehends the meaning of "nominee."  A
"nominee," generally speaking, is "[a] person designated to act in place of another, usu[ally] in a

---

[28] Docket No. 93, Exhibit 6.

[29] Docket No. 93, Exhibits 3.  I note that this should have been apparent to the Debtor's counsel, particularly as both
documents were attached to the Debtor's brief.

[30] Although Aurora asserts that it is also the servicer of the Mortgage and submitted a loan history supporting that
assertion, I need not make such a determination here, particularly in the absence of the servicing agreement.

[31] *Boruchoff v. Ayvasian*, 323 Mass. 1, 10, 79 N.E.2d 892 (1948*).  See Kiah v. Aurora Loan Servs., LLC*, No. 10-
40161-FDS, 2010 WL 4781849 (D. Mass. Nov. 16, 2010).

[32] *See Kiah v. Aurora Loan Servs., LLC*, 2010 WL 4781849 at *6.

9

very limited way" or a "party who holds bare legal title for the benefit of others . . . ."[33]  Though

MERS never held the Note, it could, by virtue of its nominee status, transfer the Mortgage on

behalf of the Note holder.[34]  Indeed, such a transfer appears to have been contemplated by the

Mortgage, as the power of sale provision specifically identifies "the successors and assigns of

MERS."[35]

The remainder of the Debtor's arguments can all be characterized as simply questioning

whether the Assignment was properly authorized.  Specifically, he queries: (1) whether Michele

Thompson was authorized to execute the Assignment; (2) whether the correct MERS related

entity authorized Thompson; and (3) whether MERS was authorized to assign the Mortgage; (4)

whether the officers endorsing the Note had authorization to do so; (5) whether, given the

absence of transaction dates, the endorsements were placed on the Note only recently; and (6)

who now holds physical possession of the Note and is giving MERS instructions, alluding to the

fact that the final endorsement on the Note is blank, rendering it a bearer instrument negotiable

by transfer of possession alone.[36]  Aside from the two arguments already addressed, the Debtor

does not state affirmatively that there is any defect in Aurora's chain of title, but instead suggests

that an evidentiary hearing is necessary to be sure.  In effect, the Debtor demands Aurora provide

---

[33] Black's Law Dictionary, 1149 (9th ed. 2009).  See *Kiah v. Aurora Loan Servs., LLC*, 2010 WL 4781849 at *6; *In re Huggins*, 357 B.R. at 183; see also *Lyons v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 61186 at *2-3.

[34] See *Kiah v. Aurora Loan Servs., LLC*, 2010 WL 4781849 at *6; *In re Huggins*, 357 B.R. at 183.  Although the Assignment contains language purporting to assign both the Note and Mortgage, MERS lacked an assignable interest in the Note.  While this surplusage evidences poor drafting, it does not affect the validity of MERS's assignment of the Mortgage.

[35] Docket No. 101, Exhibit B.

[36] Mass. Gen. Laws ch. 106, §§ 3-205(b), 3-109(a)(2).  *See Wilson v. Countrywide Home Loans, Inc. (In re Wilson)*, -- B.R. --, 2010 WL 4934936 *3 (Bankr. D. Mass. Nov. 30, 2010); *In re Almeida*, 417 B.R. 140, 149 (Bankr. D. Mass. 2009); *First National Bank of Cape Cod v. North Adams Hoosac Savings Bank*, 7 Mass. App. Ct. 790, 797, 391 N.E.2d 689 (1979) ("As the holder of the note, [plaintiff] also would be entitled to all payments to be made by the mortgagors on the note.").

additional evidence proving that there are no latent defects in its otherwise complete chain of title.  This, however, is not the standard.

As explained at the outset, a party in interest need only demonstrate "a colorable claim to property of the estate,"[37] which Aurora has done by providing a complete and facially valid chain of title establishing that it holds the Mortgage with a power of sale.  In the context of a motion for relief from stay, which the First Circuit instructs is a summary proceeding akin to a hearing on a preliminary injunction, the Court need not, and indeed should not, seek out latent defects of the kind now proposed by the Debtor.  To do so would subject every motion for relief from stay to a full evidentiary hearing, even where the Debtor, as here, has not articulated an affirmative objection but an investigatory inquiry.[38]

Having determined that Aurora is a party in interest, I must now consider whether relief from stay is warranted.  Section 362(d) provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> > > (A) the debtor does not have an equity in such property; and
> > > (B) such property is not necessary to an effective reorganization . . . .[39]

The moving party has the initial burden to demonstrate either cause under 11 U.S.C. § 362(d)(1) or the debtor's lack of equity in the property under 11 U.S.C. § 362(d)(2), while the debtor has

---

[37] *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d at 32.

[38] *See also Valerio v. U.S. Bank, N.A.*, 716 F.Supp.2d 124 (D. Mass. 2010) (application for injunctive relief denied where plaintiffs did nothing more than contend there was a "substantial question" regarding U.S. Bank's right to enforce the promissory note at the time of foreclosure).

[39] 11 U.S.C. § 362(d)(1), (2).

the burden of proof on all other issues, including whether the property is necessary to an effective reorganization.[40]

At the time the Motion for Relief was filed in September, the Debtor was three post-petition payments in arrears, or $6,729.67, with a total indebtedness of $389,615.16 owed on account of the Mortgage. While Aurora and the Debtor are nearly $100,000 apart in their assertions of the Property's value, there is no dispute that it is insufficient to satisfy the Mortgage in full. If Aurora's alleged liquidation value of $209,038.56 is correct, the obligation underlying the Mortgage is undersecured by approximately $180,576.60, while if the Debtor is correct and the Property is worth $300,000, the obligation still remains undersecured to the tune of $89,615.16. I further note that these values are without regard to the second mortgage of approximately $91,000.

In defense to the Motion for Relief, the Debtor first argues that there is an irrebuttable presumption that, as a Chapter 13 debtor, his home is necessary for an effective reorganization even though there is no equity in the Property.[41] Even assuming, *arguendo*, that there is such a presumption in Chapter 13,[42] I would still find sufficient cause exists under 11 U.S.C. § 362(d)(1) to warrant relief from stay in light of the post-petition arrears and the declining value

---

[40] *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988); *In re Huggins*, 357 B.R. at 185 (the Debtor must "present evidence that (a) she has proposed a plan rooted in her actual financial experience and condition and based on a reasonably projected financial performance derived therefrom and (b) this plan is within the realm of reasonable achievement within a prescribed and discernable period of time.").

[41] *See In re Donahue*, 231 B.R. 865 (Bankr. D. Vt. 1998), *rev'd*, *Tatko v. Donahue (In re Donahue)*, 232 B.R. 610 (D. Vt. 1999).

[42] *See In re Huggins*, 357 B.R. at 185 ("[T] Court rejects the argument that there is an irrebuttable presumption that the Property is necessary for an effective reorganization. . . . it may be that the Debtor's Property is her sole asset, and thus necessary to her reorganization. Nonetheless, these facts must be demonstrated and not presumed.").

12

of the Property in comparison to the increasing claims.[43]   Regardless of whose valuation I accept, the obligation underlying the Mortgage is substantially undersecured; a situation that will only worsen with each missed payment.

In an attempt to avoid a finding of cause under 11 U.S.C. § 362(d)(1), the Debtor asserts that his arrears are due in part to the HAMP modification process, for which he is eligible and has been wrongly denied a modification.   As such, he asks that I deny the Motion for Relief and "make the lender come to the table," implicitly requesting that I compel Aurora to accept his calculation.   The issue framed and briefed by the parties is whether Aurora properly utilized the Debtor's current "interest only" payment in the HAMP eligibly analysis or whether it should have incorporated the future fully amortized payment into the calculation.   I find, however, that they have overlooked the threshold issues: namely, the Debtor's standing to enforce the HAMP guidelines and the basis upon which this Court could essentially compel a HAMP modification.

By way of background, "HAMP was created by Congress under the Emergency Economic Stabilization Act of 2008 and is governed by guidelines set forth by [the Federal National Mortgage Association, also known as "Fannie Mae"] and the United States Department of Treasury."[44]   The purpose of HAMP is to help homeowners avoid foreclosure by obtaining loan modifications that reduce their monthly mortgage payments to sustainable levels.[45]   To this end, "Servicer Participation Agreements between mortgage loan servicers and Fannie require the servicers to perform loan modification and foreclosure prevention services specified in the

---

[43] See, e.g., *Martens v. Countrywide Home Loans (In re Martens)*, 331 B.R. 395 (B.A.P. 8th Cir. 2005) (cause for relief from stay under § 362(d)(1) exists and stay is properly lifted where debtor has not made payments on the home for many months and there was no equity for the debtor).

[44] *Speleos v. BAC Homes Loans Serv., L.P.*, -- F.Supp.2d --, 2010 WL 5174510 *1 (D. Mass. Dec. 14, 2010).

[45] *Id.* at *4 (*citing U.S. Dep't of Treasury, Home Affordable Modification Program Guidelines*, § VII, 610 (Mar. 4, 2009)).

HAMP Guidelines."[46]   Borrowers seeking modifications under HAMP must satisfy numerous

eligibility requirements, including having a monthly mortgage payment, including principal,

interest, taxes, insurance, and association fees where applicable, exceed 31% of the borrowers

gross monthly income.[47]   Aurora admits that it "entered into a HAMP Contract as a Participating

Servicer with Fannie Mae."[48]

      While HAMP is intended to benefit homeowners by helping them avoid foreclosure, a

majority of courts have held that HAMP affords no private right of action[49] and that borrowers

lack standing as third-party beneficiaries to enforce the HAMP guidelines under a breach of

contract theory.[50]   While I agree with the majority's nearly unanimous conclusion, I note that

---

[46] *Id.* at *1.

[47] *See* Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages, Version 1.0, § 6.3 at 37 (August 19, 2010); Docket No. 92, Exhibit E.

[48] Docket No. 92 at 2.

[49] *See, e.g., Ording v. BAC Home Loans Servicing, LP*, No. 10-10670-MBB 2011 WL 99016 (D. Mass. Jan 10, 2011); *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10-CV-10380-RGS, 2010 WL 4825632 (D. Mass. Nov. 24, 2010); *Zeller v. Aurora Loan Servs., LLC*, No. 3:10cv00044, 2010 WL 3219134 (W.D. Va. Aug.10, 2010); *Marks v. Bank of Am., N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988 (D. Ariz. June 22, 2010); *Aleem v. Bank of Am.*, No. EDCV 09-01812-VAP, 2010 WL 532330 (C.D. Cal. Feb. 9, 2010); *Fernandes v. U.S. Bank, N.A. (In re Fernandes)*, No. 10-1278, 2011 WL 322017 (Bankr. D. Mass. Jan 31, 2011); *Cruz v. Hacienda Assocs., LLC (In re Cruz)*, No. 11-04006, 2011 WL 285229 (Bankr. D. Mass. Jan 26, 2011).  *See also Barrey v. Ocwen Loan Serv., LLC*, No. CV-09-00573-PHX-GMS, 2009 WL 1940717 (D. Ariz. Jul. 2, 2009) (no private right of action for grievances under the Emergency Economic Stabilization Act of 2008); *Ramirez v. Litton Loan Serv., LP*, No. CV-09-0319-PHX-GMS, 2009 WL 1750617 (D. Ariz. June 22, 2009) (same); *Ung v. GMAC Mortgage*, No. EDCV 09-893-VAP, 2009 WL 2902434 (C.D. Cal. Sept. 4, 2009) (no private right of action under the Troubled Asset Relief Program).

[50] *See, e.g., Speleos v. BAC Home Loans*, 2010 WL 5174510 at *3-5; *McKensi v. Bank of Am., N.A.*, No. 09-11940-JGD, 2010 WL 3781841 (D. Mass. Sept. 22, 2010); *Hoffman v. Bank of Am., N.A.*, No. C-10-2171-SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010); *Marks v. Bank of Am., N.A.*, 2010 WL 2572988; *Benito v. Indymac Mortgage Serv.*, No. 2:09-CV-001218-PMP-PAL, 2010 WL 2130648 (D. Nev. May 21, 2010); *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81, 2010 WL 935680 (S.D. Cal. Mar. 15, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009); *In re Fernandes*, 2011 WL 322017; *In re Cruz*, 2011 WL 285229; *but see Marques v. Wells Fargo Home Mortgage, Inc.*, No. 09-cv-1985-L, 2010 WL 3212131 (S.D. Cal. 2010) (plaintiff may be able to state a claim against the defendant as an intended beneficiary of servicer participation agreement); *Reyes v. Saxon Mortgage Serv.*, No. 09cv1366, 2009 WL 3738177 (S.D. Cal. 2009) (plaintiff pled sufficient facts to plausibly support his third-party beneficiary theory by identifying the contract at issue and attaching a copy of the contract to his complaint).

14

some courts have acknowledged that a violation of the HAMP guidelines may give rise to other claims under state law.[51]   Here, however, the Debtor has not articulated any theory through which he could assert standing to obtain the relief he seeks.   Moreover, even assuming, *arguendo*, that he could, consideration of that defense or counterclaim on its merits is outside the scope of a relief from stay determination under the *Grella* standard.

## V. CONCLUSION

In light of the foregoing, I will enter an order granting the Motion for Relief.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: February 9, 2011

---

[51] *See, e.g., Speleos v. BAC Home Loans*, 2010 WL 5174510 at *6 (plaintiffs stated a plausible negligence claim under Massachusetts law); *In re Fernandes*, 2011 WL 322017 at *1 (plaintiff stated a plausible claim for breach of mortgagee's duty of good faith and reasonable diligence under Massachusetts law); *In re Cruz*, 2011 WL 285229 at *3 (same); *See also Durmic v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 4825632 at *4 (plaintiff stated a plausible breach of contract claim based upon defendant's alleged breach of the Home Affordable Modification Trial Period Plan).